UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CR-95 DRL-MGG |
| TERRANCE W. CANNON, JR., | |
| Defendant. | |

OPINION & ORDER

The government charged Terrance Cannon, Jr., with unlawfully possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). On September 1, 2020, Mr. Cannon moved to suppress the evidence obtained by law enforcement the afternoon he was arrested. He says officers only discovered the evidence after an illegal traffic stop. The court held an evidentiary hearing on October 14, *see United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991), then requested supplemental briefing (based on positions argued at the close of evidence) that the parties completed November 10. The court now denies the motion to suppress.

FACTUAL FINDINGS

These facts emerged from the evidence and testimony presented to the court.[1] *See* Fed. R. Crim. P. 12(d). On October 16, 2019, Officer Stephen Berger Jr. was on patrol with the Strategic Focus Unit, a specialized unit within the South Bend Police Department that proactively investigates gun, gang, and drug activity. Officer Berger noticed a blue Toyota Camry approach an intersection, stop at the stop sign, activate its turn signal, and then make a right turn. He was approximately 300 feet behind the Camry, so at a distance he could observe its activity.

---

[1] The government called Lieutenant Kyle Dombrowski, Officer Stephen Berger Jr., and Officer Nicholas Pogotis.

It wasn't lost on Officer Berger that this vehicle had just left a house that the Strategic Forces Unit was surveilling, albeit for the purpose of arresting a wanted individual. After observing the traffic violation, Officer Berger followed the Camry and activated his emergency lights but not his siren. The Camry drove into the parking lane of the street but did not immediately stop [Exs. I/J videos]. The Camry stopped after Officer Berger activated his siren. Four other law enforcement vehicles arrived shortly thereafter.

Officer Berger approached the driver's side of the Camry and informed the driver that he hadn't activated his turn signal far enough before he turned [Ex. O video]. Officer Berger also said he smelled burnt marijuana coming from the car. Officer Nicholas Pogotis approached the Camry from the passenger side, likewise smelled burnt marijuana, and asked the passenger, later identified as Terrance Cannon, to exit the vehicle and handcuffed him [Ex. N video].

Because it was raining, Officer Pogotis placed Mr. Cannon in the backseat of the police cruiser as he ran his information. During their conversation, Mr. Cannon admitted to Officer Pogotis that he and the other individuals in the Camry smoked marijuana earlier that day. Law enforcement officers conducted a search of the vehicle and found a small digital scale in the center console and plastic bags, a jar of fake $100 bills, and two 9 mm handguns (a Springfield Armory and a Sig Sauer) inside a bookbag in the trunk. The Springfield had been reported stolen.

Mr. Cannon was taken to the police station and given his *Miranda* warnings. During his interview, Mr. Cannon said he had no knowledge of the handguns. He admitted using the nickname "T-Roy." Officers confronted Mr. Cannon with Snapchat screenshots of an individual who looked like him, with the Snapchat name "T-Roy," attempting to sell several firearms (including two that looked like the ones found in the trunk). When presented with the Snapchats, Mr. Cannon acknowledged that he touched the handguns and that he was helping a friend sell them but would not admit to taking full possession [Ex. E].

2

Mr. Cannon was arrested for unlawfully possessing a firearm as a felon. Law enforcement obtained a warrant to search Mr. Cannon's phone. The Camry's driver was issued a citation for failing to signal 200 feet before turning in violation of Ind. Code § 9-21-8-25. The citation was later dismissed in St. Joseph Superior Court for insufficient evidence.

DISCUSSION

The Fourth Amendment to the United States Constitution establishes the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." As the constitutional text suggests, the "touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). It protects a person in his home and on the street, in his room or in his car. The Fourth Amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351 (1967); *see also Terry v. Ohio*, 392 U.S. 1, 8-9 (1968).

An automobile stop by law enforcement, even if brief, constitutes a seizure of a person within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). An automobile stop initiated by law enforcement must be reasonable. *Whren*, 517 U.S. at 810. Evidence obtained from an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). The government bears the burden of proving by a preponderance of the evidence that a warrantless stop complied with the Fourth Amendment. *United States v. Peters*, 743 F.3d 1113, 1116 (7th Cir. 2014); *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011).

A. *Mr. Cannon Has Standing to Challenge the Constitutionality of the Traffic Stop.*

Generally, the personal rights protected by the Fourth Amendment "may not be vicariously asserted" unless the individual shows that he had a "legitimate expectation of privacy" in the searched area. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). Because a traffic stop seizes all occupants of a vehicle, *Brendlin v. California*, 551 U.S. 249, 257 (2007), even a passenger without a possessory interest

3

in the vehicle may still challenge the constitutionality of the traffic stop. *United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018). Mr. Cannon had no possessory interest in the Camry, but as a passenger he may challenge the constitutionality of this stop. *Brendlin*, 551 U.S. at 257; *Rodriguez-Escalera*, 884 F.3d at 667.

      B.  *Law Enforcement Officers Had Probable Cause to Stop the Camry.*

Stopping an automobile is reasonable when a law enforcement officer has probable cause to believe that a traffic violation has occurred. *Whren*, 517 U.S. at 809-10; *United States v. Lawuary*, 211 F.3d 372, 375 (7th Cir. 2000). "Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'" *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)). It doesn't matter if a traffic offense actually occurred, only whether the officer had probable cause to believe one occurred. *See id.*

Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "does not require an actual showing of criminal activity, or even that the existence of criminal activity is more likely true than not." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (quotations omitted). By definition, probable cause looks to probabilities: "examining the totality of the circumstances in a common sense manner," *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003), and the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)). Probable cause is determined by reasonable conclusions drawn from the facts known to the officer at the time of the search or arrest. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). A law enforcement officer may act based on firsthand observations or the collective knowledge of law enforcement when officers communicate with each other. *United States. v. Williams*, 627 F.3d 247, 252-53 (7th Cir. 2010); *United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007).

Even minor traffic violations can provide law enforcement officers probable cause to stop a vehicle. *See United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (following a vehicle too closely); *Cashman*, 216 F.3d at 586 (driving with a cracked windshield); *United States v. Smith,* 668 F.3d 427, 431 (7th Cir. 2012) (failing to signal for a turn); *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995) (speeding); *United States v. Pina*, 2020 U.S. Dist. LEXIS 206115, 6-7 (N.D. Ind. Nov. 4, 2020) (changing lanes without signaling in advance); *United States v. Sanders*, 2020 U.S. Dist. LEXIS 183073, 7 (N.D. Ind. Oct. 2, 2020) (tinted windows).

Indiana law requires a driver to activate a turn signal at least 200 feet before turning. Ind. Code § 9-21-8-25. Officer Berger testified that he witnessed the Camry approach an intersection, stop at the stop sign, then activate its turn signal, and make a right turn. By activating its turn signal after stopping at the stop sign, well less than 200 feet before turning, Officer Berger had probable cause to initiate the traffic stop. *See Whren*, 517 U.S. at 810.

Mr. Cannon argues that the number of squad cars at the stop and the lack of dash cam footage suggest the traffic stop was an artificial pretext to apprehend him. Alluding to a conspiracy to fabricate probable cause, Mr. Cannon invites the court to conclude that the fantastic is more than a plausibility; but the testimony and evidence offer the court more conventional answers. Officer Berger testified that the Camry failed to signal 200 feet before making a right turn, and he was a credible witness—corroborated by his proximity to the Camry and in many instances by video footage. The contemporary police report supports the same conclusion [Ex. A]. The absence of other corroborating evidence (additional dash cam footage) doesn't undercut the credible evidence that does exist. Nor does the argued pretext render this otherwise valid traffic stop invalid. *See Whren*, 517 U.S. at 812-813 (we have "flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification") (collecting cases).

Accordingly, the court concludes that probable cause existed to initiate the traffic stop. Because the court has concluded that there was probable cause, it need not address Mr. Cannon's fruit of a poisonous tree argument as the exclusionary doctrine is not applicable here. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (requiring an unlawful action before the doctrine is applied).

C.  *The Dismissal of the Traffic Ticket Has No Bearing on the Reasonableness of the Stop Here.*

Mr. Cannon argues that the state court dismissed the driver's traffic violation charge because the state didn't meet its burden of proof, such that the traffic stop was presumptively unreasonable. Mr. Cannon asks the court to credit this determination.

"In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out." *Elkins v. United States*, 364 U.S. 206, 223-24 (1960); *accord United States v. Hill*, 898 F.2d 72, 74 (7th Cir. 1990) (error for district court to fail to make "an independent finding concerning the constitutionality of the seizure of evidence" regardless of state court's assessment). Whether the infraction ultimately led to a conviction is not the pertinent question when assessing the existence of probable cause. *See United States v. Redwood*, 2016 U.S. Dist. LEXIS 78388, 6-7 (N.D. Ill. June 16, 2016) (St. Eve, J.) (state court's decision to dismiss a defendant's state charge was irrelevant to federal probable cause analysis); *United States v. Gilbert*, 942 F.2d 1537, 1541 (11th Cir. 1991) (federal court must conduct independent constitutional inquiry even when a warrant was defective under state law); *United States v. Fossler*, 597 F.2d 478, 481 (5th Cir. 1979) (district court must make independent inquiry even when state court has determined the arrest that led to the search was illegal); *see also United States v. Prado*, 2017 U.S. Dist. Lexis 66109, 11-13 (M.D. Pa. May 1, 2017) (traffic stop was reasonable though state court would likely find no traffic violation); *Lange v. City of Grand Junction*, 2009 U.S. Dist. LEXIS 35261, 13 (D. Colo. April 10, 2009) (noting that the "the issuance of a traffic ticket that is later dismissed" still requires a court to

6

conduct an independent constitutional analysis). The court independently makes its own assessment of probable cause here.

Though decisions of other courts deserve "careful and respectful attention," *Colby v. J.C. Penny Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987), the state court decision to dismiss the moving violation doesn't direct the granting of this motion to suppress. Indeed, the two decisions are different—built on separate questions. *See Elkins*, 364 U.S. at 223-24. Because traffic violations are civil in nature, the state must prove by a preponderance of the evidence that a traffic violation actually occurred. *Coleman v. State*, 49 N.E.3d 1043, 1045 (Ind. Ct. App. 2016). Here, the government doesn't have to prove that a violation actually occurred, only that the law enforcement officer had probable cause to initiate the stop. *See United States v. Stewart*, 902 F.3d 664, 674 (7th Cir. 2018). One question is not determinative of the other. The court has independently determined that law enforcement had probable cause based on all the evidence, so the motion to suppress must be denied.

D.  *Law Enforcement Had Probable Cause to Search the Camry.*

If law enforcement smells marijuana coming from a vehicle, the officer has probable cause to search it. *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008). The search "lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks," *United States v. Patterson*, 65 F.3d 68, 70 (7th Cir. 1995) (quoting *United States v. Young*, 38 F.3d 338, 340 (7th Cir. 1994)), and packages and containers so long as a reasonable belief exists that contraband could be found there, *United States v. Kizart*, 967 F.3d 693, 695 (7th Cir. 2020); *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013).

Officer Berger testified that when he approached the driver's window the smell of burnt marijuana wafted from the vehicle. This testimony was corroborated by Officer Pogotis, who independently smelled the same distinct odor as he approached the passenger side. The court credits their testimony; indeed, Mr. Cannon admitted that he and another person had smoked marijuana

earlier that day. The smell of marijuana gave officers probable cause to search the vehicle for its source. *See Franklin*, 547 F.3d at 733; *Patterson*, 65 F.3d at 70. The search permissibly included the trunk and the bookbag inside the trunk. *See Young*, 38 F.3d at 340; *Patterson*, 65 F.3d at 70. Law enforcement found two firearms, fake bills, and plastic baggies. The spoils of this search cannot be constitutionally suppressed.

In any event, Mr. Cannon cannot challenge the search here. Although a passenger may challenge evidence obtained from an unconstitutional traffic stop, *Rodriguez-Escalera*, 884 F.3d at 667, a passenger without a possessory interest in a vehicle cannot challenge the search when the traffic stop was constitutionally conducted. *United States v. Wilbourn*, 799 F.3d 900, 908 (7th Cir. 2015). In short Fourth Amendment terms, a passenger like Mr. Cannon may challenge the seizure, but not the search. Probable cause existed for officers to initiate the traffic stop, so it was constitutional. *Whren*, 517 U.S. at 809-10; *Lawuary*, 211 F.3d at 375. Because Mr. Cannon lacked a possessory interest in the vehicle, he lacks standing to challenge the constitutionality of the subsequent search. *Wilbourn*, 799 F.3d at 908. Probable cause nonetheless existed for the search. *See supra*.

## CONCLUSION

Law enforcement had probable cause to conduct a traffic stop and to search the vehicle and items within the vehicle here. Because law enforcement complied with the constitutional protections of the Fourth Amendment, the court DENIES the motion to suppress (ECF 30).

SO ORDERED.

November 23, 2020                                          *s/ Damon R. Leichty*
                                                           Judge, United States District Court

8